J-S04021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAY JONES BAIRD, | |
| Appellant | No. 146 WDA 2015 |

Appeal from the PCRA Order December 15, 2014
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0000941-2008

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAY JONES BAIRD, | |
| Appellant | No. 147 WDA 2015 |

Appeal from the PCRA Order December 15, 2014
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0000942-2008

BEFORE: BOWES, OLSON, AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 10, 2016**

Appellant, Jay Jones Baird, appeals from the order entered on December 15, 2014, dismissing his first petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546. In addition, PCRA

*Retired Senior Judge assigned to the Superior Court.

counsel has filed a petition to withdraw. We affirm and grant PCRA counsel's petition.

On January 21, 2008, at approximately 10:31 p.m., Officer Ray Dupilka of the Latrobe Police Department was dispatched to 513 Ligonier Street in Latrobe for a report of an unresponsive male. Upon his arrival at the second floor apartment, he observed the body of Bradley Holnaider (the victim) lying on the floor in the living room of the residence. He also encountered Appellant inside the apartment.

Following their investigation, the police eventually arrested Appellant and charged him with the victim's homicide, robbery, and drug offenses.[1] Appellant filed pre-trial motions in which he sought the suppression of certain items seized during the investigation, as well as statements and a confession he allegedly made. The trial court held an evidentiary hearing on December 15, 2008. The trial court summarized the pertinent testimony from this hearing as follows:

> Appellant told Officer Dupilka that [the victim] had been staying with him in the apartment for a while, and that he had returned home to find the [victim] unresponsive in the living room. He further opined that [the victim] had suffered a drug overdose. [Appellant] consented to the search of the apartment and the apartment was then searched and processed by Westmoreland County Detective Hugh Shearer. [Appellant] was interviewed

_____

[1] 18 Pa.C.S.A. §§ 2501(a), 3701(a), and 35 P.S. §§ 780-113(a)(16), and (30), respectively.

inside the apartment by Officer Dupilka and Westmoreland County Detective Anthony Marcocci at approximately 3:00 a.m. on January 22, 2008. [Appellant] related that the [victim] came to stay at the apartment on January 20, 2008, and that he believed [the victim] was inside the apartment on January 21, 2008, when [Appellant] left to go to work. [Appellant] told the officers that he spent some time with friends after work, and returned to the apartment at approximately 10:30 p.m., when he found [the victim's] body. [Appellant] was also interviewed by Westmoreland County Detectives Richard Kranitz and Robert Weaver at his place of employment the following day.

Officers obtained a search warrant for [Appellant's] apartment on January 23, 2008, and executed the search warrant on that same day. Upon arriving at the apartment, [the] officers first knocked loudly on the door of the apartment and announced their presence at least six times. There was no response from inside the apartment. There also was no response from [Appellant] when officers attempted to contact him by telephone. It was then that the officers decided to remove the front door of the apartment by removing the hinge pins from the door. After the officers had removed the pins and were about to remove the door, the front door was opened by [Appellant] from the inside, causing it to collapse onto the officers. It was as if [Appellant] had pushed the door onto the officers. Officer Dupilka testified that he was startled by [Appellant's] actions, and immediately asked him to come out into the hallway, where he conducted a pat-down search of [Appellant] for officer safety.

Officer Dupilka knew that [Appellant] had engaged in illegal drug use in the past. Therefore, rather than running his hands up and down [Appellant's] pants, he used a "squeezing motion" when conducting the pat-down so as to lessen the likelihood of sustaining a needle-stick injury. During the pat-down of [Appellant], Officer Dupilka felt several tablets inside plastic in the left front pocket of [Appellant's] pants. He immediately recognized this as suspected contraband, based upon his training and experience in narcotic investigations. Upon retrieving this object from [Appellant's] pocket, [Appellant] advised

- 3 -

Officer Dupilka that the items were five (5) [S]uboxone tablets packaged in a plastic bag.

The officers then proceeded to search [Appellant's] apartment pursuant to the search warrant. A marijuana smoking pipe was located in plain view on the nightstand beside [Appellant's] bed, and was seized by the officers. Also seized were a tan leather chair, a tan leather ottoman, and a Phillips universal remote control. During the search, [Appellant] insisted that the officers search the kitchen garbage can, suggesting that there might be evidence in that item. Detective Kuhns of the Westmoreland County Detective Bureau complied, and located several empty heroin packets. [Appellant] suggested that these empty packets had belonged to the [victim].

[Appellant] was placed under arrest for possession of the Suboxone tablets, and he was transported to the Latrobe police station. Officer Dupilka asked [Appellant] if he wanted to be interviewed about how he had obtained the Suboxone tablets. [Appellant] indicated that he would speak to the officers, was **Mirandized**[2] and signed a written Waiver of Rights form provided by the police. The interview began at approximately 7:12 p.m. on January 23, 2008.

[Appellant] initially indicated that the tablets belonged to his fiancé. When confronted with certain conflicting evidence that the Suboxone tablets had belonged to the [victim], [Appellant] recanted his original statements and told police that he had purchased the tablets from the [victim] before he died. After further questioning on this subject, Officer Dupilka told [Appellant] that he thought [Appellant] was lying. He also told [Appellant] that there was certain evidence regarding the state of the [victim's] body that called into question whether he had died of an overdose. [Appellant] continued to provide conflicting and inconsistent statements to Officer Dupilka, and tried to talk about subjects unrelated to the focus of the interview. When confronted with [these] inconsistencies, [Appellant]

_____

[2] **Miranda v. Arizona**, 348 U.S. 436 (1966)

replied that he was not involved in killing the [victim]. At this point, Detective Kranitz, who was also in the interview room, told [Appellant] that he did not believe him, and left. After [Appellant] expressed concern that Detective Kranitz did not believe him, [Appellant] was offered and agreed to submit to a voice stress examination.

[Appellant] was provided with pizza while waiting for the voice stress examiner, Detective [Paul] Burkey, to arrive. At no time did [Appellant] request an attorney or ask to terminate the interview process. Detective Paul Burkey arrived at the Latrobe Police station shortly before 10:00 p.m[.] He introduced himself to [Appellant], explained that the test was completely voluntary, explained how the test would be administered, and gathered some preliminary information from [Appellant]. [Appellant] again signed a form, which was in part a *Miranda* warning, and in part a description of the test. The voice stress examination was then conducted.

Detective Burkey provided the results of the voice stress test to [Appellant] and explained which answers indicated low levels of stress, indicating truthfulness, and which answers indicated high levels of stress, indicating deception. While looking at the results of the test, and in particular at an answer to a question, "did you kill . . . [the victim]?" [Appellant] stated, "I'm fucked." Detective Burkey asked [Appellant] what he meant by that, and [Appellant] stated, "I did it."

Detective Burkey then immediately asked Officer Dupilka to come into the room and review the results. As he was doing so, [Appellant] again stated, "I'm fucked." [Appellant] then began to cry, and lowered his head. Officer Dupilka than asked [Appellant] to help him understand what happened inside [the] apartment, and [Appellant] admitted to killing [the victim] after he got into an argument about a debt that he owed to [the victim]. [Appellant] admitted that during the struggle, he wrapped an electrical cord around [the victim's] neck and choked him to the point that he killed him.

Recognizing that the focus of the investigation had now shifted, Officer Dupilka and Detective Kranitz then conducted a more in-depth interview of [Appellant]

regarding the death of [the victim]. That interview concluded at approximately midnight on the morning of January 24, 2008. [Appellant] agreed to participate in a videotaped interview. The videotaped interview began at 12:20 a.m. on January 24, 2008, and concluded at 1:06 a.m. that same date.

[Appellant] was placed under arrest for homicide [and robbery,] and the officers immediately prepared a criminal complaint and affidavit for those charges, as well as the drug violations. Because the officers were forced to wait for a district justice to become available to conduct a preliminary arraignment, [Appellant] was not arraigned until approximately 3:30 a.m. on January 24, 2008. At no time during his interactions with the police did [Appellant] ever request counsel, ask to terminate the interview, or invoke his right to remain silent. [Appellant] did not complain of fatigue, and was provided with access to a restroom, food, breaks, drinks, and cigarettes during the interview process.

Trial Court Opinion, 3/30/09, at 2-6 (citations and footnotes omitted).

By order entered March 30, 2009, the trial court denied Appellant's pre-trial motions. Following a five-day trial, a jury convicted Appellant of first-degree murder and all of the other charges. On September 29, 2009, the trial court sentenced Appellant to life imprisonment for the murder conviction, and an aggregate, concurrent term of five to twenty years of imprisonment on the remaining convictions.

Appellant filed a timely post-sentence motion in which he challenged the weight of the evidence supporting his convictions. By order entered March 16, 2010, the trial court denied the motion. Appellant then filed an appeal to this Court. In an unpublished memorandum filed on December 14, 2010, we affirmed Appellant's judgment of sentence. *Commonwealth v.*

*Baird*, 23 A.3d 582 (Pa. Super. 2010). Our Supreme Court denied Appellant's petition for allowance of appeal on December 6, 2011. *Commonwealth v. Baird*, 34 A.3d 824 (Pa. 2011).

Appellant filed a *pro se* PCRA petition on January 4, 2013, and the PCRA court appointed counsel to represent him. On July 15, 2013, PCRA counsel filed a motion to withdraw along with a "no-merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Thereafter, Appellant filed a *pro se* amended PCRA petition in which he withdrew the claims raised in his initial petition, and raised new claims, including allegations of PCRA counsel's ineffectiveness. The PCRA court held an evidentiary hearing with regard to all of Appellant's claims on October 30, 2014. By order entered December 14, 2014, the PCRA court denied Appellant's petitions, and permitted PCRA counsel to withdraw. The PCRA court appointed present counsel to represent Appellant during his direct appeal.[3]

---

[3] On March 13, 2015, the PCRA court noted that present counsel for Appellant did not comply with its earlier order which required a Pa.R.A.P. 1925(b) Statement of Matters Complained of On Appeal. We need not remand this appeal for the preparation of such a statement, **see** Pa.R.A.P. 1925(c)(3), because the PCRA court refers us to its opinion and order denying post-conviction relief, and present counsel has filed a "no-merit" letter.

In lieu of an advocate's brief, present counsel filed a "Brief for in [sic] Support of Petition to Withdraw as Counsel," which resembles a brief filed when counsel seeks to withdraw on direct appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Anders* imposes stricter requirements than those imposed when counsel seeks to withdraw during the post-conviction process pursuant to *Turner/Finley*, *supra*. *See Commonwealth v. Fusselman*, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004). Thus, we will assess counsel's assertion that the issues Appellant wishes to raise have no merit under a *Turner/Finley* analysis.

This Court recently explained:

> The *Turner/Finley* decisions provide the manner for [PCRA counsel] to withdraw from representation. The holdings of those cases mandate an independent review of the record by competent counsel before a PCRA court or appellate court can authorize an attorney's withdrawal. The necessary independent review requires counsel to file a "no-merit" letter detailing the nature and extent of [counsel's] review and list each issue the petitioner wishes to have examined, explaining why those issues are meritless. The PCRA court or an appellate court if the no-merit letter is filed before it, *see Turner*, *supra*, then must conduct its own independent evaluation of the record and agree with counsel that the petition is without merit. . . .

> [T]his Court imposed additional requirements on counsel that closely track the procedure for withdrawing on direct appeal. . . . [C]ounsel is required to contemporaneously serve upon his [or her] client his [or her] no-merit letter and application to withdraw along with a statement that if the court granted counsel's withdrawal request, the client may proceed *pro se* or with a privately retained attorney. . . .

*Commonwealth v. Reed*, 107 A.3d 137, 140 (Pa. Super. 2014) (citation omitted).

Here, present counsel complied with the mandates of *Turner* and *Finley*, as summarized in *Reed*, *supra*. "Accordingly, we will proceed without our independent review of the questions presented to determine if counsel correctly concluded that the issues raised had no merit." *Reed*, 107 A.3d at 141.

This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Halley*, 870 A.2d 795, 799 n.2 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001). Within the brief he filed, present counsel first discusses Appellant's claim in his amended petition that his statements and confession to police were the result of police intimidation and, therefore, involuntary. Present counsel notes that Appellant's claim fails for a number of reasons. We agree.

Initially, as recounted above, Appellant fully litigated the voluntariness of his statements and confession by filing a suppression motion prior to trial. The denial of this motion, insofar as it related to Appellant's statements and confession, was not raised on appeal. Thus, the claim is waived under the PCRA. *See* 42 Pa.C.S.A. § 9544(b). In addition, Appellant did not present

any evidence at the hearing held in this case to establish that trial counsel was ineffective for failing to raise the denial of this portion of his suppression motion on appeal. Indeed, given the trial court's credibility determinations, and its conclusion that "[t]here is absolutely no evidence to suggest that [Appellant's] confession was obtained through coercion, suggestion or duress[,]" an appellate challenge would have been unsuccessful. Trial Court Opinion, 3/30/09, at 18. Counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Thus, Appellant's claim regarding the admissibility of his statements and confession lacks merit.

In the second claim addressed by present counsel, Appellant asserts a conspiracy existed between the trial court, the Latrobe Police Department, and the district attorney's office to permit the introduction of an "altered document" and forgery at trial. This allegation concerns the admission of only a portion of the waiver rights form Detective Burkey presented to Appellant prior to the voice stress examination. As the PCRA court stated at the PCRA hearing:

> THE COURT: [Y]ou made a statement to Detective Burkey but [the jury] is not allowed to know that statement was made while you were engaging in a voice stress test or polygraph. They're not allowed to know that. We were doing something that we had to do legally to not let the jury know. Frequently in trials or in hearings if there is information that the jury is not allowed to know we redact it, that is, cross it out or black it out so they don't see certain things they're not supposed to see. We do it

usually to protect the defendant's rights.  You don't want the jury to know that you failed a polygraph test.

*\*\**

THE COURT:  . . .  The rules are that the jury cannot know there was a voice stress or a polygraph test.  This is not – that wasn't anybody tampering with anything.  You're are saying you don't like the fact that it was blacked out but that's nobody was tampering.  Everything was done on the record so you're saying that your counsel did not see that.  There was no issue there for your counsel to see.  He knew the attorneys were working to show things appropriately to the jury.  [PCRA counsel] could see that from the transcript.

N.T., 10/30/14, at 8-9.  Once again, Appellant failed to present any evidence at the PCRA hearing to support his allegations.  Thus, his claim related to any alleged conspiracy is devoid of merit.

Present counsel also notes that in his amended petition Appellant raised allegations of PCRA counsel's ineffectiveness in failing to ascertain and argue the above issues.  As we have agreed with counsel's assessment of these claims, we further agree that Appellant's claim relating to PCRA counsel's ineffectiveness is baseless.

In sum, we have reviewed the record, including the notes of testimony from the PCRA hearing, and agree with present counsel's determination that the claims Appellant wished to raise on appeal are devoid of merit.  Additionally, our independent review of the record reveals that Appellant's amended PCRA petition is meritless.  ***Reed, supra***.  We therefore affirm the PCRA court's denial of Appellant's amended petition for post-conviction relief, and grant counsel's application to withdraw.

- 11 -

Order affirmed. Application to Withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/10/2016